# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PATRICIA A. TORRE, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHROP GRUMMAN SYSTEMS CORP., a Delaware Corporation,<br><br>Defendant. | CASE NO. 8:13CV319<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Defendant's Motion for Summary Judgment (ECF 76). Also before the Court are the parties' motions to strike certain content in opposing parties' indexes of evidence. Plaintiff Patricia A. Torre ("Torre") at ECF 86 moves to strike the affidavit of Trent Dalton ("Dalton Affidavit," ECF 78-2 to 78-6); and Defendant Northrop Grumman Systems Corp. ("Northrop Grumman") at ECF 100 moves to strike the declaration of Jody Karmann ("Karmann Declaration," ECF 92-15). The Court will deny both motions to strike, but will give no weight to any content in the Dalton Affidavit or Karmann Declaration that lacks proper and sufficient foundation or that constitutes inadmissible hearsay. For the reasons that follow, the Motion for Summary Judgment will be granted.

## PROCEDURAL HISTORY

Torre filed this action in the District Court of Sarpy County, Nebraska, on September 19, 2013. ECF 1-1. She presented two claims against Northrup Grumman, both grounded in the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. § 48-1114 *et seq.* *See id.* at Page ID 16–17. Northrup Grumman removed the action to this Court, invoking the Court's diversity jurisdiction, noting that Torre is a

citizen of the state of Nebraska and Northrup Grumman is a Delaware corporation with its principal place of business in Virginia, and that the amount in controversy exceeds $75,000. *See* ECF 1 at Page ID 2.

Northrup Grumman moved to dismiss Torre's Complaint for failure to state a claim upon which relief could be granted, and the Honorable John M. Gerrard, District Judge, granted the motion; dismissed the Complaint; and gave Torre leave to file an amended complaint. Torre filed an Amended Complaint, and Northrup Grumman again moved to dismiss. Judge Gerrard noted that Torre's Amended Complaint was "a 'peculiar document' that reads more like a polemic than a pleading," leaving "much to be desired," and questioned "why the plaintiff has chosen to hide . . . facts among pages of . . . legal conclusions." ECF 21 at Page ID 166–67. Although Judge Gerrard was "bothered" by Torre's failure to state her claims "with any kind of specificity," and the fact that the Amended Complaint was "admittedly conclusory," *id.* at Page ID 167, he nonetheless found "just enough to nudge the plaintiff's claim past the defendant's motion to dismiss." *Id.*

The operative pleading at this juncture is Torre's Third Amended Complaint at ECF 65, which continues to merit the description Judge Gerrard gave the First Amended Complaint. Her factual allegations are buried in legal conclusions, and the pleading lacks the basic "who, what, where, when and how" information needed to draw necessary inferences to support her claims. Her series of Complaints is a work in progress, evolving as her grievances accrue. Adding to the challenge of construing Torre's pleadings is her failure to include attachments referenced. Exhibits E and F referenced in each version of her Complaint are attached only to her Second Amended

Complaint at ECF 62.  Those right-to-sue letters issued by the Equal Employment Opportunity Commission ("EEOC") dismissed certain administrative charges and adopted the findings of the state employment practices agency on May 4, 2016.  *Id.* at Page ID 413 & 414.  It is not possible to determine *what* charges are referenced by the notices, however, other than Torre's own reference in her Complaints to "charges of national origin discrimination and retaliation."  *See, e.g.*, Third Amended Complaint, ECF 65 at Page ID 437.

Very liberally construed, Torre's Third Amended Complaint alleges that she was subjected to a hostile work environment on the basis of her sex while she was a contract worker at Northrup Grumman from 2004 to 2015, and that she was subjected to retaliation by Northrup Grumman in the form of demotion and/or termination when she complained of the hostile work environment and/or when she filed her charges of national-origin discrimination and retaliation with the Nebraska Equal Opportunity Commission ("NEOC"), and/or when she filed this action.

Northrup Grumman's Motion for Summary Judgment and the related motions to strike became ripe on October 6, 2016, and the case was reassigned to the undersigned on October 13, 2016, in the interest of judicial economy.

## FACTS

The following facts are those stated in the parties' briefs (ECF 77, 91, 98) and supported by pinpoint citations to evidence in the record (ECF 78 to 84, 92, 99), in compliance with NECivR 56.1[1] and Fed. R. Civ. P. 56, and not resisted by the opposing party in compliance with NECivR 56.1.

---

[1] *See* NECivR 56.1(b)(1) (effective December 1, 2015):

Beginning in 2002, Northrup Grumman administered a government contract known as the Systems Engineering, Management, and Sustainment ("SEMS") program for the United States Air Force ("USAF"). The primary location for performance of the contract was Offutt Air Force Base ("Offutt") in Bellevue, Nebraska. The SEMS contract provided for Northrup Grumman to consolidate and sustain information technology infrastructure for the strategic military meteorology center of the USAF, operated by the Air Force Weather Agency ("AFWA"). The AFWA was responsible for receiving weather data from worldwide sources; running models of land surface conditions, atmospheric conditions, and space weather conditions; and delivering the products to customers including the USAF, U.S. Army, and national intelligence community.

As the prime contractor for SEMS, Northrup Grumman used a team of approximately 90–100 of its own employees, and 70–80 other personnel from 19–20 subcontractor organizations and universities. Northrup Grumman employees worked alongside contract workers to meet SEMS requirements.

At all relevant times, Torre was employed by Sterling Computers, Inc. ("Sterling"), a Northrup Grumman subcontractor. From 2004 to 2015, she worked under the direction of Northrup Grumman supervisors as a software test engineer, performing manual software testing in support of the SEMS contract at Offutt.

In 2007, the USAF awarded Northrup Grumman a second SEMS contract ("SEMS II"). Northrop Grumman adjusted its test approaches based on the

---

The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

requirements of each specific task assigned by the AFWA.  Test results were not required to be validated by an independent agency and generally no formal documentation of test details was required.

In August 2012, Northrup Grumman received an anonymous letter detailing workplace complaints, ranging from juvenile activity to personality conflicts, favoritism, and gender bias.  The letter complained about the conduct of male employees, and characterized the work environment as a "good old boys club."  Although the letter did not specify any misconduct on the part of any named individuals, Northrup Grumman dispatched a Human Resources team to investigate the allegations.  The investigators concluded that several remedial actions were warranted to address personnel communication, management style, and tension between work groups.

In April 2013, Torre's lawyer wrote to Northrup Grumman's Chief Human Resources Officer to complain of a hostile work environment allegedly fostered directly or indirectly by five male supervisors.  Northrup Grumman conducted a second investigation, and, in the summer of 2013, moved two male managers from the SEMS II contract to an off-base work site due to deficient management skills.  One of the male managers who was moved off-site had been the SEMS Program Manager.  Northrup Grumman also implemented training to improve workplace dynamics on the SEMS II program.

Beginning in July 2013, Trent Dalton became Northrup Grumman's SEMS Program Manager.  Also in July 2013, Northrup Grumman was awarded a third SEMS contract ("SEMS III"), which included incentive and penalty clauses associated with testing functions.  Shortly before the commencement of the SEMS III contract, the

USAF announced plans to reorganize and eliminate certain field agencies, including the AFWA. As a result, the USAF moved all SEMS funding to an organization known as the Air Force Life Cycle Management Center (LCMC), and moved the operations aspects of SEMS to the USAF 557th Weather Wing ("557th WW"). Northrup Grumman perceived that the LCMC required increased oversight of the SEMS contracts, with more accountability for funding; more formal processes for system testing and product evaluation, including testing by independent contractors; and more documentation of testing. The Air Force's 46th Test Squadron ("46th") performed independent software testing on most LCMC projects. The 557th WW, as the end user of the SEMS products, performed its own product evaluation after independent contractor testing.

On September 19, 2013, Torre filed this action.

In 2013 and 2014, Northrup Grumman perceived that Torre was having difficulty keeping up with her testing activities and documentation of her work, so Northrup Grumman assigned an additional tester to her team. Torre's wages, benefits, and job title were not affected.

In late 2014, Northrup Grumman began to consider realigning its SEMS III organization to accommodate the more formal testing and quality control standards Northrup Grumman perceived were required or expected by LCMC. Northrup Grumman viewed LCMC as a source of potential business growth, and was eager to meet all LCMC's expectations.

The additional tester assigned to Torre's team, who was male, resigned from his new position[2], alleging that he was harassed by three female testers, including Torre. Northrup Grumman's SEMS Program Manager investigated the male tester's allegations and determined that three women, including Torre, had conducted themselves unprofessionally and disrespectfully in their interactions with the male tester. One of the women was a Northrup Grumman employee, who was counseled by her supervisor. The other two women, including Torre, were subcontract workers. On March 17, 2015, Northrup Grumman sent letters to the subcontractors informing them of the alleged unprofessional conduct, and requested that the subcontractors take whatever action they deemed appropriate.

From April 20, 2015, through October 28, 2015, Torre filed administrative charges with the NEOC.

In the spring of 2015, Northrup Grumman's SEMS program leadership team, composed of Brent Swift, Suzanne Butler, and Trent Dalton, decided to create and use a team of Northrup Grumman personnel cross-trained to support additional testing and quality control standards for SEMS III, and to develop automated testing using computer technology to reduce time, effort, and associated labor costs. Northrup Grumman decided not to use subcontract workers for such testing and quality control functions, noting its concern that subcontract workers would be reluctant to elevate quality control concerns up Northrup Grumman's chain of command, due to the SEMS Program Manager's power to reduce the subcontract team's funding and/or future opportunities.

---

[2] Nothing in the record states when the new tester resigned, but it may be inferred that the resignation occurred before March 17, 2015, when Northrup Grumman wrote to Sterling, advising Sterling of Torre's alleged conduct related to the tester's decision to resign.

7

Northrup Grumman did continue to use subcontract workers, as well as its own employees, for the development of automated testing software. Northrup Grumman provided notice to its subcontractors that subcontract workers who lacked test automation experience should be removed from the SEMS program by August 28, 2015. Trent Dalton communicated these changes to Northrup Grumman employees and subcontract workers on July 8, 2015, with follow-up letters to all SEMS III subcontract employees and subcontractors, including Sterling, on July 16, 2015. The letter to Sterling stated that Northrup Grumman did not believe that Torre had automation testing skills nor the experience needed to support test automation activities, and that there were no other opportunities under the SEMS contract matching her demonstrated skills. The letter also stated that if Sterling had information indicating that Torre met minimum requirements for test automation, or any other open SEMS position, the information should be forwarded to Northrup Grumman. Neither Sterling nor Torre replied. Torre acknowledges that she did not have automated testing experience, nor automated test writing skills or experience.

Torre's last day at Northrup Grumman was August 24, 2015.

## STANDARD OF REVIEW

"Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint,* 736 F.3d 1134, 1136 (8th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). "Summary Judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)

(en banc) *cert. denied*, 132 S. Ct. 513 (2011)) (internal quotation marks omitted). In reviewing a motion for summary judgment, the Court will view "all facts and mak[e] all reasonable inferences favorable to the nonmovant." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.,* 703 F.3d 1104, 1107 (8th Cir. 2013). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe,* 690 F.3d at 1011 (quoting *Torgerson*, 643 F.3d at 1042) (internal quotation marks omitted). "'[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir. 2012) (quoting *Torgerson*, 643 F.3d at 1042) (internal quotation marks omitted). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue for trial" and summary judgment is appropriate. *Torgerson*, 643 F.3d at 1042 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)) (internal quotation marks omitted).

## DISCUSSION

Statutory Framework

Neb. Rev. Stat. § 48-1104 provides: "It shall be an unlawful employment practice for an employer: (1) To . . . harass any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment, because of such individual's . . . sex . . . ."

Neb. Rev. Stat. § 48-1102(2) provides: "Employer shall mean a person engaged in an industry who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, [and] any agent of such a person . . . ."

Neb. Rev. Stat. § 48-1102(14) provides: "Harass because of sex shall include . . . engaging in . . . verbal or physical conduct of a sexual nature if . . . (c) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment."

Neb. Rev. Stat. § 48-1114 provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his or her employees . . . because he or she (1) has opposed any practice made an unlawful employment practice by the Nebraska Fair Employment Practice Act, (2) has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the act, or (3) has opposed any practice or refused to carry out any action unlawful under federal law or the laws or this state.

"A written charge of violation of the [NFEPA] shall be filed within three hundred days after the occurrence of the alleged unlawful employment practice . . . ." Neb. Rev. Stat. § 48-1118(2). "The deadline for filing an action directly in the district court is ninety days after the complainant receives notice of the last action the commission will take on the complaint or charge." Neb. Rev. Stat. § 48-1120.01. "A complainant who has suffered physical, emotional, or financial harm as a result of a violation of section 48-1104 or 48-1114 may, at any stage of the proceedings prior to dismissal, file an action directly in the district court of the county where such alleged violation occurred." Neb. Rev. Stat. § 48-1119(4).

"In construing the NFEPA, Nebraska courts have looked to federal decisions, because the NFEPA is patterned after Title VII . . . ." *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir. 2002) (citing *Father Flanagan's Boys' Home v. Agnew,* 590 N.W.2d 688, 693 (Neb. 1999); *IBP, Inc. v. Sands*, 563 N.W.2d 353, 357–59 (Neb. 1997)).

Torre has presented sufficient evidence to present a genuine issue of material fact as to whether Northrup Grumman was her "employer" for purposes of NFEPA. *See Hunt v. State*, 297 F.3d 735, 741 (8th Cir. 2002) ("Determining whether a party is an employee or an independent contractor . . . requires a fact-intensive consideration of 'all

11

aspects of the working relationship' between the parties.'" (quoting *Schwieger v. Farm Bureau Ins. Co. of NE*, 207 F.3d 480, 483 (8th Cir. 2000))).

She has not, however, presented sufficient evidence to present a genuine issue of material fact as to whether Northrup Grumman caused her to be subjected to unlawful sexual harassment. Nor has she presented sufficient evidence to present a genuine issue of material fact as to whether Northrup Grumman's articulated reasons for its actions were pretext for discrimination on the basis of sex or national origin, or were retaliation for Torre's complaints of sexual harassment, her filing of charges with the NEOC, or her filing of this action.

Sexual Harassment

"To constitute a hostile work environment, harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Gavin v. Rogers Technical Services, Inc.*, 755 N.W.2d 47, 54 (Neb. 2008). "Courts examine the totality of the circumstances to determine whether there is a hostile work environment, considering the frequency of the behavior, its severity, whether physical threats are involved, and whether the behavior unreasonably interfered with the employee's work performance." *Id.* "To make a prima facie case for a hostile work environment based on sexual harassment, the plaintiff must show that (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the sexual harassment was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action." *Id.*

Here, Torre has demonstrated that she belongs to a protected group, because she is female. Most of Torre's allegations regarding unwelcome harassment are very broadly worded, *e.g.*, "good old boys' club," but she does allege that young male workers referred to her as an "old lady;" one male co-worker used social media to suggest a You-Tube clip entitled "How to Insert a Tampon;" and one co-worker asked Torre if she had married a woman.[3]

"For sexual harassment to be actionable, it must be sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment. Isolated or trivial incidents generally will not be sufficient." *Gavin*, 755 N.W.2d at 55 (internal footnote omitted). "Considering the totality of the circumstances, the work environment must be both objectively and subjectively offensive—one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.*

Torre has not come forward with evidence of sexual harassment sufficient for a reasonable jury to conclude that the conditions of her employment were altered by the creation of an abusive working environment. Considering the totality of the circumstances, she has not presented a genuine issue of material fact as to the fourth prong of her prima facie case, whether her work environment was one that a reasonable person would find hostile or abusive. Neither has she come forward with evidence that Northrup Grumman failed to take remedial action once it was made aware of her concerns, and there is no genuine issue of material fact remaining for a jury on the fifth

---

[3] The evidence demonstrates that the co-worker confused Torre with a different woman in the workplace who had in fact married a woman, and there is no evidence that the comment was intended to be insulting or constitute sexual harassment.

13

prong of her prima facie case. Accordingly, judgment will be granted in favor of Northrup Grumman on Torre's claim of sexual harassment.

Retaliation

In cases involving retaliatory discharge, the Nebraska Supreme Court has applied the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), using the term "impermissible conduct" interchangeably with "discrimination." *See O'Brien v. Bellevue Public Schools*, 856 N.W.2d 731, 740 (Neb. 2014). "First, the plaintiff has the burden of proving a prima facie case of discrimination." *Id.* (quoting *Riesen v. Irwin Indus. Tool Co.*, 717 N.W.2d 907, 914 (Neb. 2006)). To establish a prima facie case under the *McDonnell Douglas* framework, "a plaintiff must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011). Second, once the prima facie case is established, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *O'Brien*, 856 N.W.2d at 740. "The employer need only explain what has been done or produce evidence of a legitimate, nondiscriminatory reason for the decision." *Id.* (quoting *Riesen*, 717 N.W.2d at 914). Third, if the defendant does so, the plaintiff then has the burden of proving that the defendant's proffered reason is a pretext for retaliation, "i.e., that the disparate treatment would not have occurred but for the employer's discriminatory reasons." *Id.* (internal quotation marks omitted) (quoting *Riesen*, 717 N.W.2d at 914).

The Court will assume, without deciding, that Torre can prove all four elements of a prima facie case of retaliation. The burden then is on Northrup Grumman to come forward with a legitimate, non-discriminatory reason for her termination, and it has done so. Because Northrup Grumman met its burden of coming forward with legitimate, non-discriminatory reasons for Torre's termination, it is her burden to demonstrate that the proffered reasons for terminating her were a pretext for unlawful retaliation. "A reason cannot be proved to be pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 955 (8th Cir. 2012) (internal quotation marks omitted) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993)).

Torre must pass a "rigorous" test, showing that she was "similarly situated in all relevant respects" to employees outside the protected group who were treated more favorably. *Evance v. Trumann Health Services, LLC*, 719 F.3d 673, 678 (8th Cir. 2013). "[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* (internal quotation marks omitted) (quoting *Bone*, 686 F.3d. at 956).

Torre has come forward with no evidence that Northrup Grumman gave preferable treatment to similarly situated employees who had not complained of sex harassment, or had not filed NEOC charges, or had not filed lawsuits against Northrup Grumman. The undisputed material facts demonstrate that Torre was never demoted when working at Northrup Grumman, and that her termination was based on Northrup Grumman's business decision to automate SEMS testing processes and to handle the

automated testing and quality control duties with Northrup Grumman personnel, whom Northrup Grumman believed would be more willing than subcontract workers to elevate quality control concerns up the corporate chain of command. Torre was a manual tester, who lacked automated test writing skills or experience.

Viewing all evidence in a light most favorable to Torre, she has presented no evidence that would create an inference in reasonable minds that Northup Grumman had a retaliatory motive underlying the restructuring of work that led to the termination of Torre's subcontract employment at Northrup Grumman. Accordingly,

IT IS ORDERED:

1. Plaintiff Patricia A. Torre's Motion to Strike Declaration of Trent Dalton (Filing No. 86) is denied;

2. Defendant Northrup Grumman Systems Corp.'s Motion to Strike Jody Karmann's Declaration (Filing No. 100) is denied;

3. Defendant Northrop Grumman Systems Corp.'s Motion for Summary Judgment (Filing No. 76) is granted;

4. Plaintiff Patricia A. Torre's Third Amended Complaint is dismissed, with prejudice;

5. A separate judgment will be entered.

DATED this 4th day of November, 2016.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge